UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Mr. Sutton,<br><br>v.<br><br>KENNETH MICHAEL SUTTON,<br><br>Defendant. | Case No. 4:20-cr-00130-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Kenneth Michael Sutton has filed a Motion for Reduction of Sentence on compassionate release grounds, with supplementation. Dkts. 122, 138, 140. The government opposes the motion. Dkts. 125, 135. For the reasons stated below, the Court will grant the motion, reduce Mr. Sutton's sentence to time served, and require him to complete five years of supervised release.

### BACKGROUND

In 2019 and 2020, through a confidential informant, government officials discovered that Mr. Sutton and his wife were selling methamphetamine. *See* Dkt. 104. Upon arrest, Mr. Sutton immediately confessed and stated that his wife was involved in the drug sales only to the extent that he directed her. A firearm was found in their home.

Mr. Sutton pleaded guilty to Possession with Intent to Distribute

MEMORANDUM DECISION AND ORDER - 1

Methamphetamine, Aid and Abet, under 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. Dkt. 120. The Court sentenced Mr. Sutton to 96 months imprisonment, followed by 5 years of supervised release. He is serving his time at FCI Terminal Island with a full-term release date of July 28, 2029.

Mr. Sutton is 51 years old. His special needs stem from an accident in 2001. He was "gravely injured when a large log (36 inches in diameter, 18 feet in length) rolled over him, crushing his spine and pelvis." Dkt. 125-3 at 1. Between the accident date and Mr. Sutton's arrest, his injuries required 26 surgeries. *Id*.

The Court placed Mr. Sutton on supervised pretrial release because of his extensive health care needs. No pretrial non-compliance was reported. Dkt. 63. During pretrial release, he underwent four additional surgeries. Dkt. 125-3 at 1. The Court continued Mr. Sutton's sentencing to accommodate installation of an internal spinal stimulator to address continuous pain arising from his crushed and fused spine. Dkt. 108, 111, 113.

At the sentencing hearing on September 1, 2022, the Court recognized that Mr. Sutton has serious health problems, including having to use a walker or wheelchair and having an implanted neurostimulator. Dkt. 132. At the hearing, counsel and the Court discussed whether the Bureau of Prisons (BOP) had the ability to take care of Mr. Sutton's particular health needs. Mr. Sutton presented a 2016 Inspector General report finding that the BOP had limited ability to handle

inmates with mobility problems for various reasons, including having nonwheelchair accessible buildings and grounds and lacking sufficient lower-bunk space for elderly and handicapped inmates. Dkt. 106 at 3; Dkt. 106-4.

Because of the Court's concern for care of Mr. Sutton's medical issues in prison, the Court permitted him to voluntarily surrender to the BOP for immediate assessment of his health care needs. Dkt. 132 at 52.

The Court stated at the sentencing hearing that "Mr. Richert can make some major effort with the Bureau of Prisons to perhaps persuade them that they should grant him compassionate release immediately, but that's their call, not mine." Dkt. 132 at 49. The Court concluded the hearing by saying, "I'm not sure the mandatory minimum is necessary here. I think something far less than that would have been appropriate, but, again, I follow the law, and that's what the law dictates [96 months]." *Id*. at 54. "I'll recommend that you be allowed to participate in the RDAP drug treatment program, and I'll recommend that you be placed at the best medical facility that can deal with your medical conditions, and again, leave it up to you to pursue a request for compassionate release." *Id*. at 53. Dkt. 132 at 46.

Consistent with the Court's sentencing hearing remarks of potential immediate applicability of compassionate release, in October 2022 Mr. Sutton submitted a compassionate release petition to the BOP, which was not granted. In November 2022, within 90 days of entering prison, Mr. Sutton filed this Motion to

Reduce Sentence under the compassionate release statute, including numerous exhibits detailing the type of care he needs. Dkts. 122 to 122-2.

In June 2024, the Court deferred ruling on Mr. Sutton's motion. The Court appointed counsel to assist him and ordered the BOP to address the serious medical issues and its ability to meet them. Dkt. 133. In July 2024, the government filed the BOP's report detailing Mr. Sutton's medical care and his more recent medical records. Dkts. 135 to 135-4. In December 2024, Mr. Sutton submitted additional documents and records supporting the Motion. Dkt. 138.

Since Mr. Sutton's self-surrender to the BOP in September 2022, he has served almost one-third of his sentence (29 months of a 96-month sentence). He is housed in a BOP Care Level 3 facility that has chronic care clinics, laboratory, radiology, and physical therapy services. Dkt. 135 at 2.

## LEGAL STANDARD

The Court may not modify a defendant's sentence once imposed, except in limited circumstances. *Dillion v. United States,* 560 U.S. 817, 819 (2010). Congress provided for a "compassionate release" exception in 18 U.S.C. § 3582(c)(1)(A).

The Court may grant release if it finds (1) the defendant exhausted administrative remedies available in the BOP, 18 U.S.C. § 3582(c)(1)(A); (2) the defendant's reasons for release are extraordinary and compelling, pursuant to the

Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b); and (3) the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence reduction.

The defendant bears the burden of showing that "extraordinary and compelling reasons warrant such a reduction" under U.S.S.G. § 1B1.13(b). The current policy statement provides, in pertinent part, that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof: … suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," and "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13 (unnumbered and condensed).

The consideration factors of 18 U.S.C. §3553(a), in pertinent part, include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training,

MEMORANDUM DECISION AND ORDER - 5

medical care, or other correctional treatment in
the most effective manner.

## ANALYSIS

### 1. Exhaustion Requirement

First, the exhaustion requirement must be met. 18 U.S.C. § 3582(c)(1)(A).

The record reflects that Mr. Sutton has exhausted his administrative remedies by

making the prerequisite request to his BOP warden. Dkt. 122-2 at 112. The BOP

did not respond. Dkt. 122 at 1. The Court concludes that Mr. Sutton properly

exhausted his administrative remedies.

### 2. Extraordinary and Compelling Reasons

Mr. Sutton asserts that release is appropriate for a combination of reasons

listed in the policy statement—suffering from a serious physical or medical

condition … that substantially diminishes the ability of the defendant to provide

self-care within the environment of a correctional facility and from which he or she

is not expected to recover," and "suffering from a medical condition that requires

long-term or specialized medical care that is not being provided and without which

the defendant is at risk of serious deterioration in health." *See* U.S.S.G. §

1B1.13(b)(1)(B) and (C).

The Court concludes that he meets this exception based on the following.

MEMORANDUM DECISION AND ORDER - 6

## A. *Serious Physical Condition*

On March 2, 2022, Dr. Zachary Warnock documented Mr. Sutton's unique

and weighty needs for consideration in sentencing:

> He has significant medical issues that I'm assisting
> with managing. He has chronic back pain and lumbar
> radiculopathy from an injury to his back that involved a
> crushing impact to his spine. I see him frequently for
> trigger point injections. Additionally, he has a spine
> stimulator implanted in his back. Even with these
> treatments he still has difficulty getting around and often
> requires the use of a walker and sometimes a wheelchair.
> These things would be difficult to manage if he were
> imprisoned.

Dkt. 138-3 at 1.

### i.   Internal Spine Stimulator

The internal spinal simulator that Dr. Warnock implanted to alleviate Mr.

Sutton's severe chronic back pain requires an external remote control to work. On

November 17, 2023, PT Julian Dudley reported that "Patient states he is doing well

. . . due to his stimulator." Dkt. 138-2 at 8. However, after that visit, it was

reported that Mr. Sutton's remote control for his stimulator had been confiscated by

prison staff. On November 22, 2023, Dr. Allan Delman of the BOP recorded: "He

had a spinal cord stimulator in place for his neck and low back. The low back

stimulator is working but the neck controlled [sic] was taken away when he was

incarcerated and it is not working." Dkt. 138-2 at 3. Dr. Delman requested an

offsite pain management specialist visit for "chronic neck and back pain following multiple surgeries and management of spinal cord stimulators." Dkt. 135-1 at 56.

On January 17, 2023, Mr. Sutton met with Dr. Keith Tang at the BOP. Dr. Tang ordered a non-formulary pain medication, Diclofenac, for six months. Dr. Tang requested an off-site pain specialist visit for back and neck pain and wrote that Mr. Sutton "needs to f/u with pain management to acquire his pain stimulator remote." *Id.* at 8.

Mr. Sutton asserts that, instead of permitting him to use the remote control that is required for the expensive and effective implanted spinal stimulator to work, the BOP provided him with a less effective product, a Transcutaneous Electrical Nerve Stimulation (TENS) unit, which provides *external* stimulation to the spine through the skin. Dkt. 135 at 3. Mr. Sutton argues that a TENS unit serves a different rehabilitative function than an internal stimulus device that sends electricity directly into the spinal cord. *See* Dkts. 135 at 3; 138 at 2, 2 n.3 & 4, and Exh. A & B. The record does not show that this change was necessary or appropriate. This change is contrary to the course of treatment Dr. Warnock, the treating specialist, decided upon—spinal fusion and an implanted spinal stimulator for Mr. Sutton's ongoing severe pain caused by the crushing of his spine. *See* Dkt. 121-1.

One year after Dr. Tang recommended that Mr. Sutton be given his internal stimulus remote control, on January 30, 2024, RN Dindo Bacalso noted that Mr. Sutton "needs to meet with Medtronic representative for device programming." Dkt. 135-1 at 34. Bascalso ordered the medical department to "make consult for Medtronic for device programming." *Id*. It is unclear whether this happened.

  ii. <u>Physical Therapy</u>

Mr. Sutton arrived at prison with a custom walker, and both of his lower legs were weak. However, his condition quickly deteriorated. In the November 22, 2023, medical check-up, Dr. Delman noted decreased strength in Mr. Sutton's lower left extremity, "some of which may be pain mediated." Dkt.138-2 at 3. As a result of Mr. Sutton's loss of leg strength in his left leg, he became unable to walk to internal prison destinations with his custom walker. Since that time, he has had to rely on a wheelchair and a volunteer inmate "pusher" to help him navigate the facility. *Id*. Dkt. 138-1 at pg. 5; Dkt. 130.

Mr. Sutton needs regular physical therapy to help slow deterioration of his body and restore mobility. Mr. Sutton had a physical therapy evaluation on January 18, 2023. It was noted he was being seen in "physical therapy for chronic back pain and weakness leading to impaired functional independence." Dkt. 138-1 at 5. Mr. Sutton was educated as to "physical therapy's role in regard to restoring

function" and there was a discussion about a "possible DME [durable medical equipment] to assist with ADLs [activities of daily living]." *Id*. at 6.

On November 3, 2023, Mr. Sutton stated to physical therapist (PT) Julian Dudley that "today may not be a good day for PT due to . . . impaired left leg dysfunction," describing it as 'the connection between his brain and left leg is off.'" Dkt. 138-2 at 15. PT Dudley reported that Mr. Sutton had been performing his HEP (home exercise program) and "on his good days he is able to walk a mile." *Id*. Mr. Sutton clarifies in his briefing that he made this statement as a joke. Dkt. 138 at 14. The record supports Mr. Sutton's contention; at that session, Mr. Sutton walked only 20 feet with his walker to improve activity tolerance and strength, requiring "extensive standing reset breaks during gait training." Dkt. 138-2 at 15. Other gait training records show that Mr. Sutton tolerated distances of 100 feet or less. *See* Chart at Dkt. 138 at 7.

On November 7, 2023, PT Dudley described Mr. Sutton's gait as "wide-base, waddling, guarded, and favoring." Dkt. 138-2 at 13. Mr. Sutton ambulated 13 feet and 12 feet in gait training. *Id*.

On November 11, 2023, PT Dudley wrote that Mr. Sutton reported 3/10 pain and that he was doing well due to his stimulator working. Dkt. 138-2 at 8. Mr. Sutton ambulated 100 feet in gait training. *Id*.

On November 14, 2023, Mr. Sutton ambulated 53 feet in gait training. Dkt. 138-2 at 11. He started the session with pain at 3-4/10 and ended at 8-9/10. Dkt. 138-2 at 11. In physical therapy on November 21, 2023, Mr. Sutton had to charge his spinal stimulator. After he charged and began using the stimulator, Mr. Sutton reported to PT Dudley a dissipation of left posterior knee pain. Dkt. 138-2 at 5. In gait training, Mr. Sutton walked 42 feet, hampered by left knee pain and an inability to fully extend his knee.

Mr. Sutton had a physical therapy appointment on December 14, 2023. Dkt. 135-1 at pg. 47. At that time, he requested to reschedule due to pain. *Id*. There are no further physical therapy appointments noted in the record. Mr. Sutton states he is not able to attend physical therapy without a walker. Dkt. 138 at 8. The BOP told him he could not have both a walker and a wheelchair, and so he was forced to relinquish his custom walker, *see id*., which he used less than the wheelchair but which was necessary to be able to attend physical therapy.

iii.   Specialists

Mr. Sutton requires treatment by pain and orthopedic specialists. While the BOP is able to send Mr. Sutton to some specialty appointments for evaluation and care, variables associated with incarceration cause this process to be difficult and often delayed. For example, on March 1, 2023, Mr. Sutton attended an appointment with BOP physician's assistant Joanie Randle to discuss what care would follow,

MEMORANDUM DECISION AND ORDER - 11

according to the pain specialist's recommendations. Ms. Randle reported only:
"Pain specialist report is illegible to this provider." Dkt. 138-1 at 1. It is unclear
what happened next and whether follow-up was needed and provided. This type of
delay would not have occurred without the intervening difficulties of incarceration.

     iv.   <u>Injections for Pain</u>

     Mr. Sutton requested and received a Ketorolac Toradol injection for pain on
January 27, 2023. Dr. Warnock, Mr. Sutton's treating specialist outside of prison,
noted that Mr. Sutton "gets relief form trigger point injections for 1-2 weeks now
but after 7-10 days cervicalgia and low back pain become restricting again." Dkt.
122-1 at 2. The record is unclear how often pain injections are provided to Mr.
Sutton in BOP custody.

     v.   <u>Dental Issues</u>

     In December 2024, Mr. Sutton supplemented the record to show that almost
all of his teeth had to be extracted due to their poor condition. *See* Dkt. 140 and
exhibits. He allegedly is "living on mashed potatoes" from the commissary,
because he cannot chew prison meals. Dkt. 140. While this is not evidence that the
BOP has neglected Mr. Sutton's teeth or that it would not provide him with
alternative meals if he asks through the prison grievance system, it shows that Mr.
Sutton has developed yet another serious health condition that requires additional

care, likely, dentures or a dental bridge, as well as coordination with a nutritionist if he remains unable to eat a regular diet.

      vi.   <u>Summary</u>

Frequent visits to BOP Health Services, some appointments with specialists, the issuance of a medical grabber, and use of a TENS unit do not meet Mr. Sutton's specialized medical care needs, especially his need to address his constant, severe pain and his inability to use his walker to regain mobility. Mr. Sutton requires access to his walker, regular physical therapy appointments, and access to the controller for his internal spinal stimulator. Additionally, the lack of assistance due to an insufficient number of inmate orderly companions provides further evidence Mr. Sutton's specialized needs are not being met.

Under the circumstances, Mr. Sutton has borne his burden of proof to show that his physical condition is deteriorating because he is not receiving adequate and timely specialized medical care. *See* USSG § 1B1.13(b)(1)(B) and (C). The documentation received from BOP shows varied care for Mr. Sutton, but much of it does not meet his specialized needs, especially his physical rehabilitative needs, as required by U.S.S.G. § 1B1.13(b)(1)(C).

    **B. *Diminished Ability to Provide Self-Care***

On January 19, 2023, at the request of Dr. Tang, social worker Juanita Guevara met with Mr. Sutton for an Activities of Daily Living (ADL) assessment.

Dkt. 138-1 at 4. She assessed Mr. Sutton at 1/6 on the Physical Self Maintenance Scale for having difficulty with daily tasks including toileting, dressing, grooming, physical ambulation, and bathing. Dkt. 138-1 at pg. 4. He was rated a 5/9 on the Instrumental Activities of Daily Living scale, indicating difficulty with prison activities comparable to housekeeping, food preparation, shopping, and mode of transportation. *Id.* A PCS Helping Hands "Plan of Care" dated April 19, 2022, about a year prior to Ms. Guevara's assessment shows approximately the same lack of functionality when Mr. Sutton was assessed at that time. Dkt. 122-1 at 8-9. On January 17, 2023, Mr. Sutton reported to Dr. Tang that "it's hard for him to bend over and wipe himself after each bowel movement." Dkt. 138-1 at 7.

Despite having a companion assigned, Mr. Sutton receives significant assistant from his cell mate Brad Kehm. Dkt. 130. Mr. Kehm states that he pushes Mr. Sutton's wheelchair to and from pill line, all activities, meals, showers, and commissary; he helps him put on shoes, socks, pants, and a jacket; he helps him shave and get to the shower; and he writes all of his requests to staff because Mr. Sutton's hands go numb. *See id*. There are not enough available trained inmate companions to assist Mr. Sutton, and so Mr. Kehm helps Mr. Sutton voluntarily. BOP has insufficient inmate orderly companions, and Mr. Sutton suffers inadequate care as a result.

MEMORANDUM DECISION AND ORDER - 14

After Mr. Sutton's ADL assessment, he was issued a medical grabber due to his mobility impairments on January 31, 2023. Dkt. 138-1 at 2. However, a medical grabber would do little to cover the large number of tasks Mr. Sutton's cellmate performs for him, nor would it help him in bathroom hygiene. *See* Dkt. 130. Therefore, his self-maintenance ability has not changed significantly with issuance of the medical grabber.

### 3.  Section 3553(a) Factors

Compassionate release is appropriate when the § 3553(a) factors (1) and (2)(A) through (D) weigh in favor of release, which the Court now analyzes.

Factor (1) is "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a). Mr. Sutton was sentenced for possession and intent to distribute methamphetamine. His personal use of illegal drugs was, in part, a response to severe pain caused by his spinal injuries. His use grew into a trafficking business, relying on his wife and a friend to distribute. Prior to the present crime, Mr. Sutton's criminal convictions were limited to traffic offenses and disorderly conduct. Dkt. 122-2 at 95. He has no violent felonies and no history of violence.

Mr. Sutton did not reoffend while on pretrial release or post-sentencing release. He expressed embarrassment and regret over his crimes, acknowledged that his condition of pain did not justify breaking the law, and commented that he

had not so much as jaywalked since he had been charged with the crime. Dkt. 132 at 42. All of these factors weigh in favor of release.

Factor 2(A) is the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Since his self-surrender to the Bureau of Prisons (BOP), Mr. Sutton has served almost one-third of his sentence (29 months of a 96-month sentence). The Court agreed with defense counsel at sentencing that *it was the way the crime was charged* that caused the 96-month requirement; the sentence otherwise would have been about the time he has actually now served. The Court was constrained by the mandatory minimum at sentencing and stated, at the time, that a shorter sentence would have been appropriate. Dkt. 132 at 46. Because Mr. Sutton took all of the responsibility for supervising the drug trafficking business and for ownership of the firearm, his wife had a much lighter sentence—no incarceration time and five years of probation. The time Mr. Sutton has actually served reflects the seriousness of the crime of small trafficking rings and promotes respect for the law prohibiting possession of methamphetamine with intent to distribute. Together with his five years of supervised release, the time served constitutes just punishment for the crime under the circumstances. This factor weighs in favor of release more strongly now than at the time Mr. Sutton filed his motion because he has served additional prison time while his motion was under consideration.

MEMORANDUM DECISION AND ORDER - 16

Factor 2(B) is the need for the sentence imposed to afford adequate deterrence to criminal conduct. A sentence reduction does not conflict with deterrence. The sentence imposed was harsh. Only convicted felons with severe health or other extraordinary issues can qualify for a sentence reduction, which would not be a motivating factor for most members of the general public to decide to commit drug trafficking. In addition, Mr. Sutton will be required to comply with the conditions of supervised release, including drug testing. *See* Dkt. 120 at 3-5, Judgment of September 1, 2022. If he does not, he will be back in prison. This factor weighs in favor of release.

Factor 2(C) is the need for the sentence imposed to protect the public from further crimes of the defendant. Mr. Sutton was able to traffic in methamphetamine while using a walker; his confinement to a wheelchair may diminish his ability to commit crime. His increased difficulties with self-care make him a lower risk to the community. The lack of a serious criminal history and Mr. Sutton's recognition of his wrongs and expressed desire to adhere to the law after this crime, demonstrated by his stellar behavior during pre-trial release and incarceration, show that he is not a public danger. This factor weighs in favor of release.

Factor 2(D) is the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. As noted above, Mr. Sutton is not receiving

needed medical care for his serious health issues in the most effective manner. Outside prison, he will have quicker and better access to his specialized stimulators and remotes, his walker and wheelchair, home health care aides, medical specialists, injections for pain, physical therapy, and emergency services, if needed.

The time spent in incarceration has been adequate to provide Mr. Sutton with several tools that will be helpful to his release. Mr. Sutton has been treated for severe opioid use disorder, having received Buprenorphine injections regularly, which should aid in his ability to fight relapse. Dkt. 135-2 at 54, 65. He completed the BOP Drug Abuse Education Course on October 28, 2024. Dkt. 140-1. His certificate shows the course was a minimum of 12 hours and was designed "to help the offender to make an accurate evaluation of the consequences of his alcohol/drug use and consider the need for treatment." *Id*. Mr. Sutton reports he "is engaging in treatment to the extent his health conditions allow." Dkt. 140 at 2. This factor weighs in favor of release.

### 4. Conclusion

Sufficient evidence shows that incarceration is not providing Mr. Sutton necessary treatment to keep his already-seriously-debilitating condition from deteriorating. Management of his pain is a prerequisite to being able to participate in physical therapy, which is designed to stop deterioration to the extent possible. Being unable to participate in physical therapy means that Mr. Sutton's body

deteriorates further, increasing the odds that he will not be able to be a productive member of society if he survives 96 months of incarceration.

Sufficient evidence in the record shows that Mr. Sutton requires extensive aid from another person for self-care. He has difficulty wiping after going to the bathroom; he relies on a volunteer wheelchair "pusher" to eat, shower, attend medical exams, and go anywhere; and he would have great difficulty evacuating the facility in the case of a life-threatening emergency.

Comparing the sentence Mr. Sutton received with the sentence his wife received—when they were engaged in the same enterprise for the same reasons— shows that his release after serving one-third of his sentence in prison is equitable and does not contravene principles of justice. Because Mr. Sutton has shown extraordinary and compelling reasons for a reduction in sentence, because he is still subject to five years of supervised release, and because the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence reduction, his motion will be granted. Mr. Sutton's sentence will be reduced to time served, and upon release, he shall immediately begin serving his five-year term of supervised release.

As to Mr. Sutton's release plan, the Court notes that he plans to live with his wife and his parents. *See* Dkt. 122 at 2; Dkt 138 at 21. The Court has reviewed the Information Only Petition (Dkt. 139), providing an update on Petitioner's wife. The Court has confidence that, under all of the circumstances, the United States

MEMORANDUM DECISION AND ORDER - 19

Probation Office will determine living arrangements and conditions appropriate for Mr. Sutton. *See* Dkt. 120 at 4 ¶ 5.

## ORDER

**IT IS ORDERED:**

1. Defendant Kenneth Michael Sutton's Motion for Compassionate Release (Dkt. 122) is **GRANTED**.

2. Mr. Sutton's term of imprisonment is reduced to time served.

3. Mr. Sutton must serve five years of supervised release.

4. This Order is stayed for up to fourteen days, for verification of Mr. Sutton's residence and/or establishment of a release plan, to make appropriate medical and travel arrangements, and to ensure Mr. Sutton's safe release. Mr. Sutton shall be released as soon as a residence is verified, a release plan established, appropriate medical and travel arrangements made, and it is safe for Mr. Sutton to travel. If more than fourteen days are needed to accomplish these tasks, the parties shall immediately notify the Court and show cause why the stay should be extended.

5. All conditions of supervised release from the September 1, 2022, Judgment (Dkt. 120) shall remain in effect.



DATED: February 19, 2025

B. Lynn Winmill
U.S. District Court Judge